**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| Kayla Bonezzi,<br><br>　　　　Plaintiff,<br><br>v.<br><br>First-Citizens Bank & Trust Company;<br>and Reeves Skeen, individually,<br><br>　　　　Defendants. | Case No. 2:24-cv-3807-RMG _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff Kayla Bonezzi, complaining of the acts of Defendants First-Citizens Bank & Trust Company, ("First Citizens" or the "Bank") and Reeves Skeen (individually, "Skeen") (collectively, "Defendants"):

**NATURE OF CLAIM**

1. Plaintiff brings this action for actual damages, liquidated damages, attorney's fees and costs, and for other relief for Defendants' failure to compensate Plaintiff commensurate with her male counterparts for work requiring equal effort, skill, responsibility, performed under similar working conditions, in violation of the Equal Pay Act of 1963 (amending the Fair Labor Standards Act), 29 U.S.C. § 206(d) ("EPA").

2. Plaintiff also brings this action for actual damages, liquidated damages, attorneys' fees and costs, and for other relief for Defendants' failure to compensate Plaintiff for

1

overtime wages for hours worked in excess of 40 hours in a workweek, in violation of FLSA §§ 206-207.

## PARTIES

3. Plaintiff Kayla Bonezzi is domiciled in the State of South Carolina, as she permanently resides in Charleston County, South Carolina.

4. Upon information and belief, Defendant First-Citizens Bank & Trust Company is a corporation incorporated under the laws of North Carolina, with bank branches across the State of South Carolina.

5. At all times pertinent to this Complaint, First Citizens engaged in interstate commerce or in the production of goods for commerce as defined by 29 U.S.C. §§ 203(r) and 203(s).

6. Upon information and belief, at all times relevant to this Complaint, First Citizens' annual gross volume of sales made or business done was not less than Five Hundred Thousand and 00/100 dollars ($500,000.00). Alternatively, Plaintiffs worked in interstate commerce so as to fall within the protection of the FLSA.

7. The business of First Citizens was and is an enterprise engaged in commerce as defined by 29 U.S.C. § 203(s)(1) and, as such, First Citizens are subject to, and covered by, the FLSA.

8. At all times relevant to this Complaint, Defendant Skeen, who is male and the Bank's "Area Executive," and a resident and citizen of the State of South Carolina, exercised a high level of control over the FLSA and EPA violations herein, including but not limited to exercising authority over compensation with respect to Plaintiff. As such,

Defendant Skeen was a "co-employer" of Plaintiff for purposes of the FLSA as amended by the EPA.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Plaintiff has alleged a cause of action under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

10. Venue is proper under § 28 U.S.C. 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in the District of South Carolina, Charleston Division.

11. The work and pay records of Plaintiff and the members of the collective are in the possession, custody, and/or control of Defendants, and Defendants are under a duty, pursuant to section 11(c) of the FLSA, 29 U.S.C. § 211(c), and the regulations of the United States Department of Labor, to maintain and preserve such payroll and other employment records from which the amount of Defendants' liability can be ascertained. Plaintiffs request an Order of this Court requiring Defendants to preserve such records during the pendency of this action.

## FACTS

12. On the first page of the Bank's Employee Manual ("Manual"), First Citizens purports to "**provide equal employment opportunity for all persons** by administering recruitment, hiring, training, promotion, **compensation**, benefits and privileges of employment, appointments for advancement (including upgrading and promotion), transfers, relocations, social and recreation programs, and terminations of employment

3

(including layoffs and recalls) for all associated without discrimination because of race (include traits historically associated with race, such as hair texture and protective hairstyles), color, religion, national origin, **sex** …" (Emphasis added.)

13. On the "About Us" page[1] of its website, First Citizens purports to be "committed to embracing diversity, disavowing discrimination and advancing our inclusion, equity and diversity efforts."

14. However, such lofty pronouncements about equality were the opposite of what Plaintiff experienced at the Bank.

15. Defendant Skeen was involved in the decisions to set the wages and pay for Plaintiff, and therefore, Skeen is individually liable to Plaintiff.

16. On March 19, 2018, the Bank hired Plaintiff in the "dual role" of Financial Services Representative 1 ("FSR 1") and a Licensed Professional Associate ("LPA").

17. In this dual role, Plaintiff's pay rate was $26.93 an hour, roughly $56,014 annually.

18. At the time Plaintiff was hired, she had nine (9) years of banking experience in various roles, including teller, teller team lead (managing the teller line), personal banker, assistant manager, and manager.

19. At the Bank, an FSR 1 is a personal banker with sales goals set forth by Bank management, and whose responsibilities include: opening accounts (checking, savings, CDs, minor accounts, etc.); handling maintenance issues such as wires and online

---

[1] https://www.firstcitizens.com/about-us/inclusion-equity-diversity#:~:text=Leaders%20are%20committed%20to%20embracing,the%20needs%20of%20the%20bank.

banking support; taking loan applications for car loans, credit cards, and unsecured loans.

20. As and FSR 1, Plaintiff performed all of the duties set forth above, and observed other FSR 1s performing same.

21. In Plaintiff's LPA role, Plaintiff handled investment accounts where she met with clients to discuss their future financial goals and investment needs; and if the clients decided to invest, Plaintiff could set up mutual funds and annuities accounts for them.

22. In December 2018, during a discussion about Plaintiff's goals and career aspirations at the Bank, Manager of Retail Banking, Tabathia Hagans ("Ms. Hagans"), told Plaintiff that she preferred Plaintiff for a management position at the Bank's Oakbrook Branch in North Charleston.

23. However, in a subsequent discussion with Ms. Hagans, Ms. Hagans stated that Defendant Reeves Skeen decided Plaintiff did not have enough experience for a management position. Rather, Skeen encouraged Plaintiff to accept an FSR 2 position.

24. FSR 2s are permitted to originate home equity lines and small business loans. Thus, it is understood among Bank staff that an FSR 2 is paid more than an FSR 1.

25. However, when Plaintiff inquired about an increase in pay for the FSR 2 position, Skeen stated the Plaintiff would not get a raise in transitioning to the FSR 2 role.

26. The Bank subsequently failed to fully process Plaintiff's FSR 2 paperwork, and by September in 2019, the position was given to Alex Hamann a male, who was compensated at approximately $29.32 per hour, or approximately $61,000.

27. Plaintiff's dual role and Mr. Hamann's job were of equal skill and responsibility. Although Plaintiff and Mr. Hamann had different job titles, the only difference in the skill or responsibilities required was that Mr. Hamann could issue one additional loan product than Plaintiff.

28. Plaintiff's dual role and Mr. Hamann's job were of equal effort. The only difference in effort between Plaintiff's dual role and Mr. Hamann's FSR 2 position was that management purportedly set higher goals for FSR 2s than FSR 1s, though Plaintiff observed that her male counterparts, like Mr. Hamann, were not similarly required to have to meet all goals in order to advance.

29. During her time at the Bank between 2018 and 2022, Plaintiff observed three (3) males who were hired after her, receive multiple promotions with **no previous banking experience**. Namely:

    - Austin Walker: Hire year- 2019; Incoming Job- SSR; Promotion Date and Title: January 2020, SSR3; 2021, FSS

    - Jake Shamon: Hire year- 2020; Incoming Job- FSR 1; Promotion Date and Title: October 2021, Premier Relationship Banker

    - Darren Sperry- Hire year- 2021; Incoming Job- FSR 2; Promotion Date and Title: December 2022, Financial Sales Manager

    - Ted Moore: Hire year- 2019; Incoming Job- FSM III; Promotion Date and Title: August 2022, Business Banker (Not sure if I can add Ted since he was my manager)

30. On or around August 2021, after Austin Walker (a male employee with no previous banking experience) was nominated and elected to attend the Leadership Class, Plaintiff complained to supervisor, Ted Moore, about observing a pattern of male employees

6

with less experience than Plaintiff receiving promotions and given more opportunities to advance, such as attending the Leadership Class.

31. The Leadership Class gives bankers the opportunity to learn about each of the Bank's departments, meet people from each department, meet with a variety of associates in high upper management levels, listen to a speech given by the CEO.

32. Bank employees consider the Leadership Class to be an honor.

33. In response to her complaint, Mr. Moore told Plaintiff that the Leadership Classes were for people new to banking, which is why she was never selected to attend the Leadership Class.

34. Toward the end of 2020, Defendants approached Mr. Hamann about becoming an FSR 2 over two branch locations, the Charleston Main Branch and the Folly Rd. Branch.

35. In order to be hired into this dual role, bankers are required to pass an exam.

36. Mr. Hamann failed the exam three times.

37. Instead of being demoted, Mr. Hamann was promoted to Manager of the North Charleston Branch, and compensated between $80,000 and $90,000 per year.

38. Between 2020 and 2021, the Bank received PPP loans for COVID-19 relief. As those loans were exhausted near the beginning of 2022, Plaintiff and other hourly Bank employees were told that they were not permitted to work over 40 hours in any workweek.

39. Beginning in 2022, Plaintiff while working at the Folly Rd. Branch, she was required to arrive at work at 8:30AM and clock out by 5:00PM, Monday through Friday.

40. During this time, Plaintiff was also required to work through lunch.

41. Specifically, Defendants required Plaintiff to enter her travel time between business travel destinations (such as the Branch to a scheduled Wealth Management appointment) as her "lunch break" in order to avoid overtime hours.

42. As such, Plaintiff worked an hour for which Defendants never compensated her.

43. Additionally, although Plaintiff was required to clock out at 5:00PM each day, she was frequently, often nightly, required to answer emails from home. Specifically, between in 2022, clients had Plaintiff's cell phone number and email address. Bank customers emailed and called Plaintiff after 5:00PM with inquiries and responses regarding such items as missing information on an application, more information the Bank needed from them for an application, etc. Because of the way the PPP loans were being processed, Plaintiff had to respond quickly in order to get the customers' applications in line for possible approval of their PPP loans.

44. Plaintiff was never compensated for this "off the clock" time spent working on behalf the Bank, and such time did not count toward overtime hours in excess of 40 in a workweek.

45. Toward the end of June 2022, Plaintiff was still performing her dual LPA/ FSR 1 role, compensated at $31.32 per hour, or $63,000 per year.

46. Around the same time, the Bank hired a male employee named Darren Sperry as an FSR 2 primarily at the Charleston Main Branch, but who was later transferred to Plaintiff's Folly Rd. Branch.

47. At this time, there was no difference between the FSR 1 and 2 roles at the Folly Rd. and 17 North Mount Pleasant Branches, as Plaintiff and Mr. Sperry performed the same

8

duties and responsibilities, for example: opening new accounts, servicing existing accounts; answering customer questions; and handling loan applications for credit cards, car loans, unsecured loans, home equity lines, and some small business loans. Plaintiff and Mr. Sperry were also required to work the same hours. As such, the FSR 1 and 2 roles at the Folly Rd. and 17 North Mount Pleasant Branches were virtually identical in terms of day-to-day job requirements.

48. Moreover, FSR 1s and 2s in both the Folly Rd and 17 North Mount Pleasant Branches were subject to the same performance standards which, when met or exceeded, purportedly lead to advancement in the Bank.

49. Plaintiff observed that most of the other FSR 1s and 2s at the Folly Rd. and 17 North Mount Pleasant Branches generally had five to seven years of previous banking experience.

50. Plaintiff and Mr. Sperry both worked under Defendant Reeves Skeen, who was a gate-keeper and decision-maker with respect to hiring, firing, promotion, and advancement in the Charleston Metro and North Charleston Markets.

51. Despite Plaintiff and Mr. Sperry's jobs being in all other ways equal, Mr. Sperry was compensated at $65,000 per year.

52. Around May 2022, Plaintiff inquired with Eric Craine and Ted Moore about a management role at the Folly Rd. Branch. Mr. Craine and Mr. Moore told Plaintiff she would not be considered for a management role at that branch because she would be managing former coworkers.

53. Despite the supposed reasoning for not promoting Plaintiff to manager of the Folly Rd. branch, Mr. Sperry was later promoted to manager of the Folly Rd. Branch, where he managed his former coworkers.

54. After years of watching less qualified males be promoted and given raises at the Bank, Plaintiff resigned in June 2022. Her resignation letter states the following:

> "Unfortunately, the actions of leadership have made it hard for me to be successful in my role, and have shown that women and people of color aren't valued for career advancement. I have consistently performed by exceeding monthly and yearly goals, been an active leader for the Folly team, taken on tasks and responsibilities outside of my role to help Folly be successful in the face of staff shortages, and consistently made myself available to clients and employee needs. I have consistently gone above and beyond to help Folly be successful. **However, I have witnessed many of my male coworkers in the market, that I have either outperformed or performed equally too, be promoted instead.** I have been told that I need to continue to perform consistently and "prove" myself in order to be promoted. However, **most of these promotions were not posted so that all employees had an equal opportunity to apply, or had been given to employees who either just started at First Citizens, or were brand new to banking.** These individuals did not have the track record or performance to "prove" themselves worth of the promotion that I have been told would be needed in order to be promoted. I believe these individuals were given promotions because they fit the "mold" the Southern Coastal market wants. I have witnessed these same scenarios play out with many of my colleagues of color as well. The area lacks diversity when it comes to all positions, but especially positions of leadership.

(Emphasis added.)

### FIRST CAUSE OF ACTION:
### VIOLATION OF THE EQUAL PAY PROVISIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 206(d)

55. Plaintiff restates and re-alleges the allegations in the preceding Paragraphs as if set forth fully herein.

56. During the last three years, Plaintiff performed work for Defendants under similar working conditions, with equal skill, effort, and responsibility, as set forth at Paragraphs 48-51 of this Complaint, to the work of Darren Sperry, Plaintiff was paid $63,000, and Mr. Sperry was paid $68,000-$70,000.

57. The Bank's Employee Manual does not identify a seniority system, a merit system, a system tying earnings to quality or quantity of production, or any other system for determining which employees were eligible for raises.

58. No seniority system, merit system, system tying earnings to quality or quantity of production, or any other system for determining which employees were eligible for raises was ever orally described to Plaintiff.

59. Defendant Reeves Skeen makes compensation decisions over the North Charleston and Charleston Metro Market Bank employees, including, upon information and belief, Plaintiff's compensation, Mr. Sperry's compensation, and Mr. Hamann's compensation.

60. There is no explanation for Plaintiff's inferior compensation in relation to Mr. Sperry and Mr. Hamann other than her gender.

61. This wage discrimination constitutes a violation of 29 U.S.C. § 206(d).

62. Defendants have willfully violated the EPA in reckless disregard of Plaintiff's rights.

63. Plaintiff seeks to recover from Defendants: actual damages, the exact amount to be proven at trial, liquidated damages of an equal amount; and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION:

**VIOLATION OF THE FLSA 29 U.S.C. §§ 206-207, 211**

64. Plaintiff restates and re-alleges the allegations in the preceding Paragraphs as if set forth fully herein.

65. The FLSA, 29 U.S.C. § 206, requires employers to pay their nonexempt employees a minimum wage of Seven and 25/100 dollars ($7.25) an hour.

66. The FLSA, 29 U.S.C. § 207, requires employers to pay their nonexempt employees a rate of time and a half of their regular rate of pay for any hours worked over 40 in a workweek.

67. The FLSA, 29 U.S.C. § 211, requires employers to keep accurate records of employees' time worked.

68. Beginning in 2022, Plaintiff was required to arrive at work at 8:30AM and to clock out at 5:00 PM Monday through Friday.

69. During this time, Plaintiff was also required to work through lunch.

70. Specifically, Defendants required Plaintiff to enter her travel time between business travel destinations (such as the Branch to a scheduled Wealth Management appointment) as her "lunch break" in order to avoid overtime hours.

71. As such, Plaintiff worked an hour for which she was not compensated.

72. Even though she worked through lunch, Plaintiff was not compensated at a rate of $7.25 per hour for her lunch "break," as this was totally uncompensated time, in violation of § 206 of the FLSA.

73. Defendants did not keep accurate records of Plaintiff's hours worked, in violation of FLSA § 211.

74. Plaintiff estimates that if Defendants had properly counted Plaintiff's lunch hour toward her total hours worked in a workweek, she would have earned overtime compensation for approximately 50 hours from 2022 until her resignation. Defendants have violated FLSA § 207 by not compensating Plaintiff at an overtime rate of time and a half for these hours.

75. Additionally, although Plaintiff was required to clock out 5:00PM each day, she was frequently and often nightly, expected to answer Bank customer emails from home from 2022 until her resignation.

76. Plaintiff was not compensated for this "off the clock" time spent working on behalf Defendants, in violation of FLSA § 206.

77. Defendants illegally withheld these off the clock hours from their calculation of Plaintiff's hours worked per week, thus denying her both minimum wage and overtime compensation.

78. Defendants did not keep accurate records of Plaintiff's off the clock hours, in violation of FLSA § 211.

79. Plaintiff estimates that if Defendants had properly counted Plaintiff's off the clock hours toward her total hours worked in a workweek, she would have earned overtime compensation for approximately 50 hours from 2022 until her resignation. Defendants have violated FLSA § 207 by not compensating Plaintiff at an overtime rate of time and a half for these hours.

80. For the aforementioned reasons, Defendants have willfully violated the FLSA in reckless disregard of Plaintiff's rights.

81. Plaintiff seeks to recover from Defendants: actual damages, the exact amount to be proven at trial, liquidated damages of an equal amount; and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for the following relief:

82. Judgment against Defendants for actual damages, the exact amount to be proven at trial;

83. Judgment against Defendants for liquidated damages of an equal amount;

84. Judgment against Defendants for Plaintiffs' reasonable attorneys' fees and costs; and

85. For such other relief as the Court deems just and equitable.

Dated:  July 2, 2024

*/s/Paul Doolittle*
Paul Doolittle, Esq.
**POULIN | WILLEY | ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
(P): (803) 222-2222
(F): (843) 494-5536
Email: paul.doolittle@poulinwilley.com
cmad@ poulinwilley.com

-and-

Casey Martens
**Kim & Lahey Law Firm, LLC**
3260 Pelham Rd. #213
Greenville, SC 29615
(864) 973-6688
Cmartens@kimandlahey.com

*Counsel for Plaintiff*

14